THE CLARK-RAY-JOHNSON COMPANY, A CORPORATION UN-
DER THE LAWS OF FLORIDA, *Appellant*, v. C. D. SCHULTZ,
AS CLERK OF THE CIRCUIT COURT OF CITRUS COUNTY,
FLORIDA; J. K. KELLEY, FLOYD J. ROOKS, J. A. PERRY-
MAN, W. A. SPARKMAN AND JOHN B. WINN, AS MEM-
BERS OF AND COMPRISING THE BOARD OF COUNTY COM-
MISSIONERS OF CITRUS COUNTY FLORIDA; CITRUS COUNTY,
A POLITICAL SUB-DIVISION OF THE STATE OF FLORIDA,
AND ERNEST AMOS, AS COMPTROLLER OF THE STATE OF
FLORIDA, *Appellees*.

Opinion Filed October 3, 1923.

Petition for Rehearing Denied November 1, 1923.

1. Sections 781, 782 and 783 Revised General Statutes of Flor-
   ida, 1920, provide the manner in which illegal tax certifi-
   cates may be cancelled and for such cancellation to be effec-
   tive these provisions of the law must be substantially com-
   plied with.

2. The Clerk of the Circuit Court is merely the ministerial
   officer of the Board of County Commissioners in this State
   and is not authorized to bind the county in the matter of
   cancelling illegal tax certificates.

3. Funds paid to the Clerk of the Circuit Court for the cancel-
   lation of illegal tax certificates which were never author-
   ized to be cancelled by the Comptroller as provided in Sec-
   tions 781, 782 or 783 Revised General Statutes, were paid
   without authority of law and the State and county are not
   responsible therefor.

4. Neither the county or the State is bound by an informal
   verbal agreement on the part of the Board of County Com-
   missioners and a third party for the cancellation of illegal
   tax certificates when such agreement was never reported to
   or confirmed by the Comptroller.

This case was decided by Division B.

An Appeal from the Circuit Court for Citrus County; W. S. Bullock, Judge.

Order affirmed.

*H. M. Hampton,* for Appellant;

*Rivers Buford,* Attorney General, *J. B. Gaines,* Assistant Attorney General, and *George W. Scofield,* State Attorney, for Appellees.

PER CURIAM.—This appeal was taken by complainant below from an order dismissing a bill of complaint seeking to cancel certain tax sale certificates held by the State against its lands in Citrus County, the alleged reasons for such cancellation being that the Board of County Commissioners of said County of Citrus in August, 1909, entered into an agreement with the complainant to cancel said certificates for a consideration therein named, subject to the approval of the Comptroller.

The record in the case discloses that counsel and other representatives of complainant met with the Board of County Commissioners of Citrus County and discussed the matter of cancelling said certificates on terms and conditions as above outlined, but it also discloses that no record of any action by the said Board of County Commissioners of Citrus County affecting such cancellation was ever made, nor was the question at any time presented to the Comptroller.

The record also discloses that the Clerk of the Circuit Court of Citrus County accepted certain funds from complainant in consideration of the cancellation of said cer-

tificates, but no portion of said funds were ever received by, or reported either to the Comptroller or the County Treasury. The Clerk of the Circuit Court is merely the ministerial officer of the Board of County Commissioners and has no authority whatever to bind the county in matters of this kind. Such funds as were paid to him by the complainant were paid without authority of law and the Clerk personally and not the county is responsible therefor. 22 R. C. L. 468.

Sections 781, 782 and 783, Revised General Statutes of Florida in specific terms outlines the procedure for cancelling illegal, void or irregular tax certificates in this State, and in inspection of these statutes reveals that either the Comptroller, or a board composed of the Comptroller, State Treasurer and Attorney General is the source of authority for such cancellation, and any contract or agreement made with any other officer or officers for this purpose would be without authority of law, and invalid.

The alleged agreement between complainant and the Board of County Commissioners of Citrus County was nothing more than a mere informal conversation between the parties thereto, and since no record was made thereof, or the attention of the Comptroller at any time called thereto, and no funds paid to the Clerk of the Circuit Court of Citrus County in the premises ever reached the Comptroller or the County Treasury, it appears that there was but little if any effort on the part of the complainant to comply with the law as above referred to.

The order of the court below is therefore affirmed.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur.

TAYLOR, C. J., AND ELLIS, J., concur in the opinion.

BROWNE, J., dissents.

BROWNE, J.—Dissenting.

This is an appeal from a decree sustaining a demurrer and dismissing complainant's bill, which sought to have certain tax certificates cancelled as a cloud upon his title to lands described in the bill. There is an alternative prayer that if the court should decree that cancellation cannot be granted, that the County of Citrus be required to return to complainant, $1,000.00, with interest.

The bill in substance alleged, among other things, that in July, 1909, the Board of County Commissioners of Citrus County discovered that certain lands belonging to the complainant that had been sold for taxes, had not been redeemed and for which certificates of sale to the State were outstanding; that some of the tax certificates held by the State were illegal and void because in some instances there had been double assessments, and in others the complainant held the land under tax deeds which were based upon certificates subsequently issued by the State, and that such sale so made to him by the State cancelled all prior certificates; the complainant took the matter up with the County Commissioners of Citrus County, and at a meeting of that body their attorney who was present conceded that many of the certificates were illegal and void, and thereupon an agreement was entered into between the County Commissioners and complainant, that upon his paying the sum of $1,000.00 the certificates would be cancelled. This offer to accept $1,000.00 in settlement of the claim was conditional upon the approval of the State Comptroller. At the same time the County Commissioners authorized the clerk to accept the sum of $1,000.00 in full settlement of the claim of the State and County against the complainant for taxes on the lands described.

In September, 1909, the complainant was advised by the

Clerk of the Circuit Court of Citrus County that the Comptroller had agreed to the settlement, and he was authorized to accept the sum of $1,000.00 in full settlement, satisfaction and payment of all the tax certificates held by the State of Florida, and thereupon on the 29th day of September, 1909, he delivered to the Clerk of the Circuit Court a draft or check on the Flynn-Harris-Bullard Company of Jacksonville for $1,000.00, which was duly paid to the Clerk of the Circuit Court.

From that time on, the complainant paid all taxes assessed against the property.

Subsequently the complainant sought to sell some of these lands, when it was discovered that the certificates held by the State had never been surrendered or cancelled, and that the State and County still claimed to hold a lien against the property for taxes represented by those certificates. Whereupon he brought this suit praying for the cancellation of the certificates as a cloud upon his title, or if cancellation could not be decreed that the $1,000.00 paid by him to the Clerk of the Circuit Court of Citrus County, be refunded to him with interest.

It also appears from the bill that Walter F. Warnock, the Clerk of the Circuit Court to whom complainant paid the $1,000.00, is dead; that before his death, having become involved with the State of Florida and County of Citrus, he made a settlement with the State on behalf of himself and his bondsmen, whereby the State released him and his bondsmen from further liability growing out of any shortages in his accounts arising from his failure to pay other moneys belonging to the County of Citrus and State of Florida, and by reason of such release, the complainant is without remedy against Warnock or his bond for neglect in the performance of his official acts.

The bill is a lengthy one and sets out in detail facts and

circumstances that make the complainant's case much stronger than my epitome, but I think I have stated sufficient to warrant my conclusions.

The law requires the tax sale certificates to be kept in the office of the Clerk of the Circuit Court, and it is with him that persons desiring to redeem such certificates must deal.

The Clerk is the representative of the State and County, selected as such representative in accordance with the constitution and laws of the State.

The complainant dealt with him not as a private individual, but in his official capacity as an accredited representative of the government. Had the complainant been dealing with an individual of questionable financial reputation, he might have kept the fingers of one hand clutched upon his $1,000.00 until the cancelled certificates were actually placed in his other hand by the Clerk. But in transactions with public officials the citizen is not bound to deal with them at arms length as if they were crooks. When he was told by the Clerk of the Circuit Court that the Comptroller had approved of the settlement, he paid the $1,000.00, not to the individual W. F. Warnock, but to a government official.

The transaction readily suggests others of a similar nature between private parties. A business man may entrust a representative with all of his bills against his various debtors, one of whom may pay his indebtedness to such representative, but fail to take a receipt. The business man who would avail himself of such a situation and require his debtor to pay his indebtedness a second time, would not have an enviable reputation for financial integrity in the community where he was known.

There should be no double standard of financial integrity, one for the State and another for the individual.

The government if it would inspire patriotism and encourage law observance, should adopt standards of financial integrity worthy of being followed by the citizen.

In paying the Clerk of the Circuit Court the $1,000.00 involved in this transaction, the complainant dealt with him as a duly commissioned and qualified representative of the government, placed in that position under the provisions of the constitution and laws of the State, and his act in receiving the money became the act of the State.

Another aspect of this case disclosed by the bill increases the State's obligation to make restitution. When the County Commissioners checked up the Clerk's accounts and made a settlement with him and his bondsmen, and discharged him and them from further financial obligation, they assumed all losses that might subsequently be discovered not to have been included in the amount paid in settlement. If they did not include this item, it was their own neglect for which complainant should not be made to suffer.

In either aspect of this case, I think restitution should be made to the complainant. He has come into a court of equity—a court that is the keeper of the State's conscience—asking that this act of justice be done. A transaction of this character,—it maters not what technicality may be invoked to excuse the retention of the money—it is not one that a court of conscience should approve.

I think the decree sustaining the demurrer and dismissing the bill should be reversed.